No. 23–1856

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

LIBERTARIAN NATIONAL COMMITTEE, INC.,

*Plaintiff-Appellee,*

v.

MICHAEL J. SALIBA, *et al*.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Eastern District of Michigan, Southern Division
Case No. 23-CV-11074
The Honorable Judith E. Levy, District Judge

_____

**REPLY BRIEF OF THE DEFENDANTS-APPELLANTS**

Lena Shapiro
*Director, First Amendment Clinic*
*University of Illinois College of Law*
Lilian Alexandrova & Jonathan Resnick
*Law Students*
504 E. Pennsylvania Ave., Suite 241
Champaign, IL 61820
Telephone: (217) 244-1124
Shapiro7@illinois.edu
Law-FirstAmend@illinois.edu

C. Nicholas Curcio
*Curcio Law Firm, PLC*
16905 Birchview Drive
Nunica, MI 49448
Telephone: (616) 430-2201
ncurcio@curciofirm.com

*Attorneys for Defendants-Appellants*

i

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................1

ARGUMENT ...............................................................................2

I.    DEFENDANTS ARE NOT AN "IMPOSTER" ORGANIZATION, BUT RECOGNIZED LIBERTARIAN PARTY MEMBERS EXPRESSING DISSENTING VIEWS...........................................................................2

II.    NEITHER THE DEFENDANTS' POSITION NOR THIS COURT'S DECISION IN *TAUBMAN* DEPRIVE NON-PROFIT CORPORATIONS OF TRADEMARK PROTECTION...........................................................6

III.    PLAINTIFF'S FLAWED INTERPRETATION OF THE PRELIMINARY INJUNCTION ORDER IGNORES ITS BROAD LANGUAGE AND THE THREAT IT POSES TO FREE SPEECH. ...........................................8

ADDENDUM..............................................................................2

# TABLE OF AUTHORITIES

**Cases**

*Cobell v. Babbitt*, 37 F. Supp. 2d 6, (D.D.C. 1999)...................................................10

*Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981) ...................................................................................................................5

Geller v. Branic Int'l Realty Corp., 212 F.3d 734 (2d Cir. 2000)...........................10

*Hillsdale County Republican Executive Committee v. Wiseley*, Case No. 22-688-CZ (December 28, 2023)........................................................................................6

*Taubman v. Webfeats*, 319 F.3d 770 (6th Cir. 2003)...................................................5

*United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86 (2d Cir. 1997)..................................................................................................................9

**Statutes**

52 U.S.C. § 30124(b)(1).............................................................................................5

**Constitutional Provisions**

U.S. Const. amend. I .........................................................................................*passim*

## SUMMARY OF THE ARGUMENT

Plaintiff's brief displays an irreconcilable contradiction as to their position in this dispute – Plaintiff will purportedly allow Defendants, members of the Libertarian Party, to identify as Libertarians, but will not allow Defendants to actually *be* Libertarians, including by engaging in political activity such as soliciting political donations, filing campaign-finance paperwork, and disseminating political articles and information, including criticism of fellow party members. Plaintiff deems those free speech activities to be "trademark infringement" and bars Defendants from engaging in them. This "have our cake and eat it too" position runs afoul of not only common sense, but also of the Lanham Act and most importantly, the First Amendment.

Plaintiff makes three primary assertions in its brief which are incorrect both factually and legally. First, Plaintiff erroneously argues that Defendants represent an "imposter" organization when they have sued Defendants in their individual capacities for actions Defendants have taken as undisputed members of the Libertarian Party. Second, Plaintiff incorrectly characterizes the Defendants' brief as arguing that the Lanham Act does not apply to non-profit organizations. Defendants took no such position in their opening brief, nor do they do so now. Defendants instead argue that the Lanham Act cannot be applied to stifle the political speech of dissenters within a political party. Defendants do not suggest that other individuals

have license to mislead the public by falsely representing an affiliation with an organization they have no genuine connection to. Finally, Plaintiff's attempt to rewrite history and narrow the scope of the relief that they sought, and were granted by the District Court, does not diminish the current chilling effect on Defendants' speech and the larger public.

The District Court's Preliminary Injunction Order, which carries out Plaintiff's attempts to censor Defendants, must be vacated.

## ARGUMENT

### I.  DEFENDANTS ARE NOT AN "IMPOSTER" ORGANIZATION, BUT RECOGNIZED LIBERTARIAN PARTY MEMBERS EXPRESSING DISSENTING VIEWS.

Plaintiff spends much of its Statement of the Case (Appellee's Br. pp. 1-14) discussing many of its factual disagreements about the nature of the dispute with Defendants. First, this Court should disregard any assertions put forth by Plaintiff which are not accompanied by a citation to the record, in violation of 6th Cir. R. 28(a). *See e.g.,* Appellee's Br. p. 2 ("This internal dispute over leadership was resolved[1] according to the bylaws of the LPMI."); p. 13 ("In fact, Appellant Saliba is presently running as a Libertarian Party candidate for Congress nominated by a

---

[1] The parties' dispute regarding control over the Libertarian Party of Michigan Comerica Bank account is still pending. *See Comerica Bank v. Libertarian Party of Michigan Executive Committee, Inc., et al.*, Case No. 23-557-CB, Washtenaw County Circuit Court.

legitimate county affiliate with no attempts to prohibit this activity by the LNC.");

p. 14 ("For example, a recent social media post by Appellant Saliba uses the very

words: 'I am a member of the Libertarian Party of Michigan' and stating his political

opinions on convention results in critical contradiction to the position of the LNC.");

pp. 9-10 ("Thus, there were at least three indisputably legitimate off-ramps to this

whole matter of which Appellants were fully aware but chose to disregard, instead

opting to continue its impersonation of the officially recognized affiliate and causing

irreparable harm.")

But more importantly, none of the assertions in Plaintiff's Statement of the

Case dispute the key facts that 1) at the time of the Preliminary Injunction hearing,

Defendants were undisputedly members of the Libertarian Party and 2) that the

parties' dispute is an internal one, and not one between Plaintiff and an outside party.

Appellee's Br. p. 2 (referring to leadership disagreements between Defendants and

Plaintiff as "internal disputes"); Pl.'s Resp. to Mot. to Stay, RE 30, Page ID # 1217

(noting that Defendants are members of the Libertarian Party).

Plaintiff argues it is only attempting to prevent the Defendants from

identifying "the source of [their] political services." Appellee's Br. p. 15. Yet, the

"source" of Defendants' political services *is* their membership in the Libertarian

Party, not an outside "imposter" group. Thus, Plaintiff's goal is not to stop an

"imposter," but to quell dissent within its own party by framing Defendants as

3

"imposters" when they do not toe the party line. Under Plaintiff's logic, any member who disagrees with Plaintiff while identifying as a member of the Libertarian Party is an "imposter" who is engaging in trademark infringement. Such a position leaves no room for dissent.

As exhibited by our current primary season, dissenting political speech – especially within a political party – is core to the political process. Party leaders cannot constitutionally censor speech they do not like through the Lanham Act. Under Plaintiff's logic, a hypothetical party chair who supports a particular candidate could argue that his position as chair entitles him to decide who is and is not an "imposter" of the party, and seek injunctions against all individuals in the primary field other than the chair's preferred candidate. Such an absurd scenario is irreconcilably in conflict with the First Amendment.

Similarly, Plaintiff's attempt to raise a freedom of association argument (Appellee's Br. pp. 14, 38) fails for the same reason as the "imposter" argument – Defendants are recognized members of the Libertarian Party and are therefore inevitably associated with the Plaintiff. For this reason, Plaintiff's reliance on *La Follette* — a case that has nothing to do with an intra-party dispute — is misplaced. Plaintiffs in *La Follette* were concerned with Wisconsin state law that effectively allowed non-party (or opposing party) individuals to sabotage and weaken the party by taking advantage of Wisconsin's law allowing nonaffiliated individuals to vote in

a primary election. *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 112 (1981) (striking down a Wisconsin law that forced DNC delegates at the National Convention to vote consistently with the results of an open presidential primary, in violation of party rules.) That case has no application to this case where the relevant actors are all members of the *same* political party.

Finally, contrary to Plaintiff's assertions, a ruling in Defendants' favor would not result in the "chaos" that Plaintiff fearmongers. Appellee's Br. p. 28. If this Court correctly holds – consistent with its prior decision in *Taubman v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) – that the Lanham Act does not cover non-commercial political speech, there would still be other viable mechanisms for political parties to address true imposters and protect their associational interests. For one, political party bylaws can provide mechanisms for sanctioning members who violate party rules.  Second, if Congress believes that legislation is necessary to avoid public confusion in the areas of political speech and political fundraising, it can enact appropriate, narrowly-tailored legislation that addresses that issue (as opposed to the blunt instrument of intellectual property law). Indeed, Congress has already enacted a statute that prohibits fraudulent misrepresentation in political fundraising, 52 U.S.C. § 30124(b)(1), and the LNC is already pursuing claims under that statute before the Federal Elections Commission. FEC Complaint, RE 16–11, Page ID # 727–30.

Additionally, to the extent court intervention is needed to settle otherwise intractable governance disputes, Michigan courts offer an available forum to litigate those claims. *See, e.g.*, Order for Contempt of Court in declaratory action dated December 28, 2023, *Hillsdale County Republican Executive Committee v. Wiseley,* Case No. 22-688-CZ, pending in the Circuit Court for the County of Hillsdale.[2] As noted above, there is already a pending state court case involving the governance dispute between the LPM's Chadderdon faction and the Saliba faction, making resort to federal trademark law unnecessary and inappropriate.

## II.    NEITHER THE DEFENDANTS' POSITION NOR THIS COURT'S DECISION IN *TAUBMAN* DEPRIVE NON-PROFIT CORPORATIONS OF TRADEMARK PROTECTION.

In its response brief, the Plaintiff repeatedly and incorrectly characterizes the Defendants as arguing that the Lanham Act's protection is limited to for-profit organizations. *See, e.g.*, Appellee's Br. p. 21. The Defendants' actual position, as discussed more fully in their opening brief, p. 18, is that "the Lanham Act would run afoul of the First Amendment's free-speech protections if construed to apply beyond the limited context of commercial speech." Therefore, the appropriate analysis is not whether the trademark holder is a for-profit or non-profit entity, but rather what the context of the speech engaged in by the allegedly infringing speaker is. For example, a non-profit organization like United Way would be entitled to protection under the

---

[2] Attached as Addendum A-2.

Lanham Act if a person or entity unaffiliated with the organization began selling T-shirts bearing the United Way logo without any expressive alterations or accompanying commentary. Such a design would clearly result in confusion as to the source of the T-shirt – creating the false impression that it was produced by the United Way – and would clearly constitute commercial speech that falls within the scope of the Lanham Act.

Even a for-profit corporation, such as a well-known coffee company, could not successfully use the Lanham Act to enjoin protesters outside its corporate offices who are holding signs critical of the company's political stances, even if the signs bear the company's trademarked logo. That use of the trademark would clearly be non-commercial in nature and therefore outside the scope of the Lanham Act as defined in *Taubman* and other similar cases. Thus, the relevant distinction is not between for-profit and non-profit trademark holders, but rather whether the allegedly infringing speech is of a commercial or non-commercial nature. Plaintiff's attempt to obscure that distinction demonstrates the weakness of its position as applied to the facts of this case.

In fact, none of the case law cited by Plaintiff affirms their position that a political party can use its trademark to silence the dissenting speech of a recognized party member. Accordingly, the fact that Plaintiff disapproves of Defendants' speech in this case does not turn it into trademark infringement.

### III. PLAINTIFF'S FLAWED INTERPRETATION OF THE PRELIMINARY INJUNCTION ORDER IGNORES ITS BROAD LANGUAGE AND THE THREAT IT POSES TO FREE SPEECH.

Perhaps because it now realizes the free speech implications of the District Court's injunction, the Plaintiff attempts to paint the Defendants as "confused" about the breadth of its application. Appellee's Br., pp. 10-11. However, the Plaintiff's creative revisions at the appellate stage do not change the nature of the relief that was sought and granted *in full* by the District Court.

In its Complaint, Plaintiff requested "[a] Preliminary Injunction enjoining Defendants and others acting in concert with Defendants from infringing on Plaintiff's trademarks and from using, advertising or publicizing any information that includes or refers to Plaintiff's Trademarks or any colorable imitation thereof ..." Compl., RE 1, Page ID # 4; *see also* Decl. of Andrew Chadderdon in support of Pltf.'s Mot. for Prelim. Inj., RE 12-41, Page ID # 593–95 (criticizing Defendants for soliciting political and legal defense donations, criticizing various board and Libertarian Party members, and posting on social media regarding the dispute with Plaintiff); Mot. for Prelim. Inj., RE 12, Page ID # 404 ("For the foregoing reasons, the Court should grant the LNC's motion for a Preliminary Injunction to stop Defendants use of Plaintiff's registered trademarks …"). The District Court granted the Plaintiff's motion *in full*. *See* Prelim. Inj., RE 21, Page ID # 1135. Contrary to the Plaintiff's misleading assertions on appeal, the District Court certainly did not

limit its Order to "identifying and acting as the Libertarian Party affiliate and solicit[ing] . . . donations as the Libertarian Party affiliate." Appellee's Brief p. 12.

As it stands, neither the Plaintiff nor the District Court have explained what it means to "engage in trademark infringement" when the Defendants are undisputedly members of the Plaintiff organization, and when their speech is undisputedly political in nature. Because the application of the Lanham Act in this context is so unusual, the contours of the Defendant's remaining free-speech rights are impossible to determine with any level of certainty. If political activity constitutes a "service," as Plaintiff claims based on the Second Circuit's erroneous decision in *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86 (2d Cir. 1997), Defendants risk violating the Preliminary Injunction by merely being involved in politics and holding themselves out as members of the Libertarian Party.

Further, to the extent the District Court sought to mitigate the impact of the Preliminary Injunction by stating in a later Order that Defendants are "free to identify as Libertarians and to voice their political opinions," that effort was unavailing. Mot. to Stay Order, RE 32, Page ID # 1240-1241. Even after this supposedly clarifying Order, it still remains unclear whether the Defendants are allowed to refer to themselves as members of the "Libertarian Party," or whether the Order should be construed literally as allowing them to identify only as "Libertarians." Further, even if the Preliminary Injunction allows the Defendants to "voice their political

opinions" in some capacity, it is far from clear whether it allows them to do so while simultaneously representing themselves as members – or candidates for office – of the Libertarian Party of Michigan. After all, as noted above, the Plaintiff specifically requested that the District Court preliminarily enjoin the Defendants "using, advertising or publicizing *any information* that includes or refers to Plaintiff's Trademarks." It would be an exercise in futility to try to give sufficient context to the Order as "regardless of what the district court had in mind at the time it signed the order, the order must be interpreted as its plain language dictates." *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000); *see also Cobell v. Babbitt*, 37 F. Supp. 2d 6, 16 (D.D.C. 1999) ("Court orders are 'to be interpreted using an objective test that considers the plain language of the order and the circumstances surrounding its issuance.'")

Finally, Plaintiff illogically points to Defendants' attempts to comply with the Order to avoid sanctions and its own strategic decision not to challenge some of Defendants' social media posts critical of Plaintiff while this appeal is pending as evidence that the Order is not broad.[3] Appellee's Br. p. 14. None of this changes the sweeping language of the injunction, nor does it disprove Plaintiff's attempt to use

---

[3] As noted above, this section of the Plaintiff's brief includes myriad statements that lack citation and are unsupported by the record on appeal. To the extent one or more of the Defendants is willing to test the boundaries of preliminary injunction, that does not have any bearing on what the text of the injunction Order actually says.

a broadly worded trademark infringement order to silence party members. Perhaps most importantly, it does not prevent Plaintiff from moving to silence Defendants more broadly after this appeal is resolved. The mere existence of the Order inevitably chills constitutionally protected political expression – both that of Defendants and of the larger public.

## CONCLUSION

For these reasons, as well as those stated in their opening brief, the Defendants respectfully request that this Court vacate the District Court's entry of a Preliminary Injunction Order.

Dated:          January 24, 2024

Respectfully submitted,

/s Lena Shapiro
Lena Shapiro
*Director, First Amendment Clinic*
*University of Illinois College of Law*
Lilian Alexandrova & Jonathan Resnick
*Law Students*
504 E. Pennsylvania Ave., Suite 241
Champaign, IL 61820
Telephone: (217) 244-1124
Shapiro7@illinois.edu
Law-FirstAmend@illinois.edu

/s C. Nicholas Curcio
C. Nicholas Curcio
*Curcio Law Firm, PLC*
16905 Birchview Drive
Nunica, MI 49448
Telephone: (616) 430-2201
ncurcio@curciofirm.com

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2491 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Microsoft Word Times New Roman 14-point font.


Dated:        January 24, 2024                    Respectfully submitted,

                                        /s/ Lena Shapiro_____
                                        Lena Shapiro
                                        *Director, First Amendment Clinic*
                                        *University of Illinois College of Law*
                                        Lilian Alexandrova & Jonathan Resnick
                                        *Law Students*
                                        504 E. Pennsylvania Ave., Suite 241
                                        Champaign, IL 61820
                                        Telephone: (217) 244-1124
                                        Shapiro7@illinois.edu
                                        Law-FirstAmend@illinois.edu

                                        *Attorneys for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I, Lena Shapiro, hereby certify that on January 24, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

/s/ Lena Shapiro
Lena Shapiro
*Director, First Amendment Clinic*
*University of Illinois College of Law*
Lilian Alexandrova & Jonathan Resnick
*Law Students*
504 E. Pennsylvania Ave., Suite 241
Champaign, IL 61820
Telephone: (217) 244-1124
Shapiro7@illinois.edu
Law-FirstAmend@illinois.edu

*Attorneys for Defendants-Appellants*

# ADDENDUM

Order for Contempt of Court in *Hillsdale County Republican Executive Committee v. Wiseley, et al.*, dated December 28, 2023 ........................................................A-2

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF HILLSDALE

HILLSDALE COUNTY REPUBLICAN
EXECUTIVE COMMITTEE,
                Plaintiff,                          File No. 22-688-CZ

vs.


DAREN WISELEY, et al.,

                Defendant.

_____/

## **ORDER FOR CONTEMPT OF COURT**

At a session of said Court held at the Courthouse in the City of
Adrian, County of Lenawee, and State of Michigan on December
28, 2023.

      PRESENT:    MICHAEL R. OLSAVER, Circuit Court Judge

### I.    Background

Plaintiffs filed a complaint seeking declaratory relief alleging that defendants violated

MCL 168.599 and the Hillsdale County Republican Executive Committee bylaws. Various

defendants challenged the subject-matter jurisdiction of the circuit court to resolve the dispute

based upon the political question doctrine. This Court found that it did have jurisdiction over the

dispute and resolved the case via summary disposition. Ultimately, the Court resolved the dispute

in favor of Plaintiffs and entered a declaratory judgment permanently enjoining the defendants,

and all other persons acting in concert or participation with defendants, from (1) holding the

defendants out as officers of the Hillsdale County Republican Executive Committee unless they

are elected to those positions in compliance with the HCREC bylaws; (2) conducting or attempting

to conduct business on behalf of the HCREC or the Hillsdale County Republican Party unless they

1

A-2

are elected to those positions in compliance with the HCREC bylaws; (3) sending emails or any other form of communication that purports to be sent on behalf of the HCREC unless they are elected to those positions in compliance with the HCREC bylaws; and (4) engaging in communication, including via social media or other electronic communications, that purports to be issued on behalf of the HCREC unless they are elected to those positions in compliance with the HCREC bylaws. None of the defendants appealed the declaratory judgment.

Subsequent to entering the declaratory judgment, this Court issued an order directing defendants Mosby, Smith and Gritzmaker to show cause why they should not be held in contempt for their failure to comply with the declaratory judgment based on allegations that they continued to hold themselves out as officers the HCREC and conducted events in the name of the Hillsdale County Republican Party. This Court also ordered the Michigan Republican Party and its chairperson Kristina Karamo to show cause why they should not be held in contempt for their failure to comply with the declaratory judgment based on allegations that, after receiving a copy of the declaratory judgment, the Michigan Republican Party website continues to list Mr. Mosby as the chairperson of the HCREC and that a hyperlink for the Hillsdale County Republican Party on the Michigan Republican Party website links to a website controlled by Defendants Mosby, Smith and Gritzmaker on which they hold themselves out as the Hillsdale County Republican Party and HCREC officers.

At the contempt trial, Plaintiffs called one witness, Brent Leininger, the current chairperson of the Hillsdale County Republican Executive Committee, and introduced numerous exhibits. Mr. Leininger's testimony was unrebutted as neither defendants Mosby, Smith and Gritzmaker, nor respondents Karamo and the Michigan Republican State Committee called any witnesses or offered any evidence.

A-3

## II.    Standard of Proof

Caselaw has not clearly defined the standard of proof that applies to civil contempt proceedings. Many cases have applied the "clear and unequivocal" standard. *See In re Contempt of Robertson,* 209 Mich App 433, 439 (1995); *In re Contempt of Calcutt,* 184 Mich App 749, 757 (1990). Other cases have applied the "preponderance of the evidence" standard. *See Porter v Porter,* 285 Mich App 450, 457 (2009); *In re Contempt of Auto Club Ins Ass'n,* 243 Mich App at 712. For purposes of this opinion and order, the Court will apply the "clear and unequivocal" standard.

## III.    Contumacious Acts of Defendants Mosby, Gritzmaker and Smith

### a.    Comic Zoo Event

On May 4, 2023, after Defendants were served with the injunctive order, the email address hillsdalecountygop@gmail.com sent out an advertisement for a "1st Annual Comic-Zoo." In the upper left-hand corner of the advertisement is the Hillsdale County Republican Party logo. In the upper middle section of the advertisement is a postmark overwritten with the words "America First!" The middle section of the advertisement includes the words "Hillsdale County Republican Party" directly above the words "1st Annual Comic Zoo." On the same day, Mr. Mosby posted a message on Facebook that references both the Court's order as well as the comic zoo event. Mr. Mosby and Mr. Smith shared the event advertisement on their personal Facebook pages on May 4, 2023. The advertisement also appeared on a Facebook event page that listed Mr. Gritzmaker as an organizer of the event.

The comic zoo was also advertised on the "Hillsdale County Republican Party" Facebook page. That page names Mr. Smith as the owner  and includes the words "We are the official & sanctioned Hillsdale County Republican Party page".

The event advertisement shown in Plaintiff's Exhibits 8, 9 and 11 is clearly designed to make it appear that the event is sponsored, sanctioned, and/or hosted by the Hillsdale County Republican Party. It includes the party logo and the words "Hillsdale County Republican Party" directly above "1st Annual Comic-Zoo." Nowhere in the graphic is there any indication that the event is hosted by defendants' political action committee, the America First Hillsdale Republicans. While it does include the words "America First!", those words are used as a generic slogan which does not in any way indicate or give any reasonable person a reason to believe that the event is sponsored by someone other than the Hillsdale County Republican Party. The Court's order prohibits the defendants from conducting or attempting to conduct business on behalf of the Hillsdale County Republican Party. The Court finds by clear and unequivocal evidence that Mr. Mosby violated the Court's order when he shared the advertisement on his Facebook page (Plaintiff's Exhibit 11), that Mr. Gritzmaker violated the Court's order by creating a public Facebook event that utilized the advertisement (Plaintiff's Exhibit 9), and that Mr. Smith violated the Court's order by continuing to operate a Facebook page in the name of the Hillsdale County Republican Party (Plaintiff's Exhibit 10) and sharing the advertisement on his personal Facebook page (Plaintiff's Exhibit 11).

### b. Defend Our 2A Event.

The Court finds that there is insufficient evidence to establish that any of the defendants violated the April 28, 2023 order in relation to the Defend Our 2A event that took place in Ionia, Michigan in July 2023. Plaintiff's Exhibits 19 and 20 showed pictures of Mr. Smith standing in front of a Hillsdale Court Republican Party banner and some t-shirts at the event. While Mr. Leininger was able to testify that he did not authorize Hillsdale County Republican Party participation at the event, he was unable to testify regarding who set up the display or raised the banner. Without more, there is insufficient evidence to determine that Mr. Smith was conducting

or attempting to conduct business in the name of the Hillsdale County Republican Party by attending and being photographed at this event.

### c. Hillsdale County GOP Website

The evidence established that defendants Mosby, Smith and Gritzmaker violated the April 28, 2023 order by holding themselves out as members of the Hillsdale County Republican Executive Committee on the website www.hillsdalecountygop.com. Plaintiff's Exhibit 11 is a Facebook page which purports to be for the Hillsdale County Republican Party. Mr. Smith is listed as the responsible party for that Facebook page. It includes a post for the Comic Zoo event organized by defendants. It also includes a link to hillsdalerepublicanparty.org. The hillsdalerepublicanparty.org address automatically redirects to the www.hillsdalecountygop.com website. Plaintiff's Exhibit 17, which Mr. Leininger testified is the "About Us" page of the www.hillsdalecountygop.com website, under the heading "Meet the Officers" shows Mr. Mosby as chair, Mr. Smith as secretary, and Mr. Gritzmaker as treasurer. The photograph of Mr. Gritzmaker appears to be taken at the May 4, 2023 Comic Zoo event. It was one of over 100 pictures posted to Facebook by Mr. Smith shortly after the event. The contact telephone number for the website is Mr. Smith's telephone number. Mr. Leininger's unrebutted testimony was that his most recent visit to the website was September 7, 2023, and that it continued to appear as depicted in Plaintiff's Exhibit 17. This is a clear and unequivocal violation of the Court's order enjoining them from holding themselves out as officers of the Hillsdale County Republican Executive Committee.

### IV.    Contumacious Acts of Respondents Michigan Republican State Committee and Kristina Karamo

In addition to enjoining the actions of defendants, the Court's order enjoins all other persons acting in concert or participation with defendants from engaging in in actions prohibited

5

A-6

to defendants. Plaintiff's allege that respondents Michigan Republican Party and its chairperson Kristina Karamo have violated this order by holding defendants Mosby, Gritzmaker and Smith out as officers of the Hillsdale County Republican Executive Committee. This Court has previously ruled that it has jurisdiction to resolve this matter with respect to these non-party defendants.

Mr. Leininger's unrebutted testimony was that on May 3, 2023, Plaintiff's attorney sent a letter via email to Michigan Republican Party Chairperson Kristina Karamo, the Michigan Republican State Committee and to Mr. Hartman as attorney for the Michigan Republican State Committee, that included a copy of the Court's April 28, 2023 order. The letter further advised that the state party website names David Mosby as the chair of the Hillsdale County Republican Executive Committee. Additionally, the state party website has a hyperlink to the www.hillsdalecountygop.com described above. That website holds itself out as Hillsdale Republican Party, uses the Hillsdale County Republican Party logo, and identifies Mr. Mosby as chair, Mr. Smith as Secretary and Mr. Gritzmaker as treasurer. Mr. Leininger testified that the state party website continued to link to the www.hillsdalecountygop.com website identifying defendants as members of the Hillsdale County Republican Executive Committee through the date of the contempt hearing on September 8, 2023. This testimony was unrebutted, as none of the defendants called any witnesses or offered any evidence. Therefore, there is clear and convincing evidence establishing that Ms. Karamo and the Michigan Republican State Committee violated the Court's April 28, 2023 order. Respondents Karamo and Michigan Republican State Committee acted in concert or participation with Defendants Mosby, Smith and Gritzmaker by linking to a website used by those Defendants to hold themselves out as officers and members of the Hillsdale County Republican Executive Committee, and continuing to do so after being advised of the Court's April 28, 2023 order.

## V.    Conclusion

The evidence establishes that defendants Mosby, Smith and Gritzmaker, as well as respondents Karamo and the Michigan Republican State Committee violated the Court's April 28, 2023 order in the ways described above. These actions impair the functioning of the Court because defendants and respondents have acted in direct defiance of the order by engaging in conduct enjoined by the order. Consequently, the Court assesses the following sanctions:

1. Mr. Mosby is assessed a fine of $500.00 pursuant to MCL 600.1715.

2. Mr. Smith is assessed a fine of $500.00 pursuant to MCL 600.1715.

3. Mr. Gritzmaker is assessed a fine of $500.00 pursuant to MCL 600.1715.

4. Respondent Karamo is assessed a fine of $500.00 pursuant to MCL 600.1715.

5. Respondent Michigan Republican State Committee is assessed a fine of $500.00 pursuant to MCL 600.1715.

6. Defendants Mosby, Smith and Gritzmaker and Respondents Karamo and Michigan Republican State Committee shall pay Plaintiff's attorney fees related to the investigation and prosecution of the contempt. The liability of defendants and respondents for the payment of attorney fees shall be joint and several.


IT IS SO ORDERED.


Dated:    December 28, 2023

_____
HON. MICHAEL R. OLSAVER
CIRCUIT COURT JUDGE

A-8